J. L. REINSCHMIDT, *et al.,* v. LOUISVILLE & NASHVILLE RAILROAD CO.

150 So. 266.
Opinion Filed October 7, 1933.

John M. Coe, for Plaintiffs in Error;

Carter & Yonge and Dickenson & Carter, for Defendant in Error.

PER CURIAM.—In this case, which was a suit for recovery from a shipper of alleged undercharges for freight transported by plaintiff railroad company, the gist of the allegations of the special counts of the declaration was that, under the tariffs and schedules of charges of the carrier, on file with and approved by the Railroad Commission at the time of the shipment of certain stave bolts and headings to defendant, that defendant had become liable to pay, but had not paid to the carrier, the full amount of the applicable tariff charges.

A plea filed to the declaration in effect denied the allegations of plaintiff's special counts as to there being any amounts due the railroad company over and above what the *proper* tariffs called for. While the plea undertook to set forth the reasons why defendant claimed no undercharges were due, in that defendant contended that the fuel rate should have been applied as it was applied, to the particular shipments in controversy, yet in substance the plea simply puts in issue the general substantive allegation of plaintiff's declaration concerning liability for the undercharges sued for.

Where a plea to the merits is of such nature that under it a defense to the action may be proved, the plea is good

and a demurrer to it should not be sustained. McDaniel v. Harrell, 81 Fla. 66, 87 Sou. Rep. 631, 13 A. L. R. 1333.

The defendant's special plea to which plaintiff's demurrer was sustained in this case in effect puts in issue the allegation of plaintiff's declaration to the effect that the defendant had failed to pay to the carrier the full sums of money due it for the transportation and delivery of stave bolts and headings according to the tariff rates and charges *lawfully* in force and applicable.

The question whether the Railroad Commissioners' Class P rate, as apparently claimed by the carrier, or some other rate, as claimed by the shipper in his plea, was the properly applicable rate, cannot be decided on the pleadings alone, since neither tariff is pleaded and we cannot take judicial notice of railroad tariffs not so specifically pleaded and set forth in the record as to be susceptible to judicial construction.

Defendant's third additional plea affords the basis for a defensive showing by the defendant at a trial that the shipments it actually made were of such character as not to be subject to the higher charges sued for by the railroad company, whether the particular fuel rate set up in the plea and relied on by defendant is the applicable rate or not.

The issues presented by the declaration and plea considered together were: (1) what was the applicable rate, if any, prescribed by the Railroad Commission for stave bolts and headings and (2) whether or not the shipper had paid such applicable rate, or had only paid such amount on it as to leave an undercharge due the railroad company. These questions are mixed questions of law and fact, to be decided upon a consideration of the particular tariffs claimed to be applicable, after they are adduced in evidence and are before the court together with facts and circumstances in

evidence to show the nature and character of the material shipped.

It is admitted by all parties that no specific tariff exists for stave bolts and heads *eo nomine*. Therefore a mixed question of law and fact is presented as to what tariff is legally applicable to the shipments sued for, considering the tariffs in the light of the established facts concerning the shipment.

The judgment should be reversed with directions to overrule the plaintiff's demurrer to defendant's third additional plea and have such further proceedings as may be according to law.

Reversed and remanded for further proceedings.

DAVIS, C. J., and WHITFIELD, TERRELL and BROWN, J. J., concur.

ELLIS and BUFORD, J. J., dissent.

BUFORD, J. (dissenting).—This was a suit by defendant in error to collect the difference between the freight charged and collected for certain shipments of stave bolts and headings delivered to the defendant at Pensacola, Florida, over the line of railroad of the plaintiff and its connecting carriers from various points in Florida, and the amount which it claimed to be legally due for such freightage. The defendant filed several pleas but the case was tried upon the declaration as amended and a plea designated Plea No. 3. In that plea it is alleged:

"That the several sums of money claimed in the several counts of the declaration herein filed are sued for by the plaintiff as an alleged insufficient payment of freight upon the shipments of commodities mentioned in the bill of particulars attached to the declaration, but these defendants deny that there is any insufficient payment or undercharge in said transaction for the following reason, to-wit: that

said commodities consisted of short lengths or blocks of wood, some round and some split, wholly unworked and unmanufactured, substantially identical in character, value, weight and method of handling, with wood customarily and usually used for fuel throughout the State of Florida; that at the time said shipments moved there was no rate pre-scribed by law or administrative regulations made pursuant thereto for such identical commodity described by its specific name, but there was prescribed a rate for wood for fuel contained in the Florida Classification, duly prescribed by the Railroad Commission of said State, and by applicable rules of construction it was then and there provided that when articles not specifically provided for nor embraced in said classification as articles not otherwise indexed by name, were offered for transportation, carriers should apply the classification and rate provided for articles which were analogous thereto. That there was no other article an-alogous to the articles mentioned in the bill of particulars in the said classification and rate provisions, save and except wood for fuel, and said commodity so shipped was in part destined for use as fuel, that is to say, that the same was destined and ultimately used for the manufacture of barrel material in the factory of the defendants, and the slabs, shavings, sawdust and portions of said wood left over were used as fuel in said factory; that notwithstanding this, plaintiff now seeks to apply to said shipments the rate provided by the Railroad Commission of the State of Florida for logs, but defendants aver that logs, as known to commerce and transportation in the territory in question, consist of the cut and trimmed trunks of trees, in long lengths, suitable for the manufacture of lumber or for use as piling or poles or similar uses, and that such logs are much longer, more difficult of handling, and of greater value than the

material involved in the transportation herein, and that such material so transported is of short lengths easy to handle, of small value compared with logs, and far more analogous to wood for fuel, than to logs; and defendants say that said rate and classification for logs was not applicable to said shipments here in issue, and that they have paid in full the transportation charges thereon as determined by the applicable rate."

Demurrer to plea was sustained, and thereupon judgment was entered in favor of the defendant.

Under the declaration the railroad contended that it was entitled to receive payment of freight based upon the classification and rate promulgated by the Railroad Commission of the State of Florida for "logs, except cedar CL minimum weight 30,000 lbs. class P," while defendant's plea presents the contention that defendant was entitled to have the benefit of the rate which was applied and collected and which under the classification and tariff promulgated by the Railroad Commission was "wood for fuel CL per cord 1/10 of class P."

Now, the question for us to determine is whether or not stave bolts and heading as offered for shipment are nearer analogous as a commodity to "wood for fuel" or to "logs." Counsel agree that the rule of analogy be applied in this case as a matter of law and that rule is recognized by the Railroad Commission of the State of Florida and is carried in its Florida Classification No. 7 on page 12 in the following language:

"When articles are not specifically provided for, nor embraced in the classification as articles 'not otherwise specified' are offered for transportation, the carriers may use the classification applying on articles which, in their judgment, are analogous, but in such cases the carriers must report

the facts to the Railroad Commission in order that, if necessary, the proper classification may be regularly established." And it is also admitted that there is no specific rate fixed by the Railroad Commission in Florida for "stave bolts and heading."

I may say here that I can find no good reason why the statement found in "Coal and Coke Rates" in the Southeast, Docket No. 569, 35 I. C. C. Report 187, as follows:

"It may be that the rail lines can not haul any considerable quantity of bunker coal to New Orleans at a rate higher than $1.25, for they now haul at that rate less than one-fourth of the bunker coal. It may be that they can retain the land business at a rate higher than $1.25, for at that rate they have taken practically all of the land business away from the water lines. They must, however, choose the rate on coal to New Orleans which they deem to be to their best interests. They may not make rates dependent upon the use to which the commodity is to be put. *In the Matter of Restricted Rates,* 20 I. C. C. 426; *Interstate Commerce Commission* v. *Balt. & Ohio R. R.,* 225 U. S. 326. There is no more justification for a lower rate on coal used for fuel on the boats than there would be on coal for use on the railroads. The rate to New Orleans on coal moving beyond in transportation may, of course, be less than that on coal having destination at New Orleans. But, having named a rate to New Orleans, the carrier may not concern itself as to the use that is made of the coal;"

does not present a logical enunciation of the law, which should be applied to intrastate shipments as well as interstate shipments. I do not think that the Railroad Commission would be justified in making one rate and classification for gravel to be used in mixing concrete for the construction of buildings and another rate for like gravel to be used

as a surface for highways. Nor would it be justified in fixing one tariff for lumber to be used in ship-building and another rate for lumber to be used in house-building, and another for lumber to be used in bridge-building.

In other words, there is no logical reason why the purpose for which the commodity is to be used should be taken into consideration at all in fixing the classification and tariff for its carriage by common carrier.

The Railroad Commission has recognized this fact in its Order No. 1036, Docket No. 1085, in the Matter of Revision of Florida Classification No. 7 to provide a specific rating covering pulpwood CL between Intrastate Points in Florida, 35th Annual Report of the Railroad Commission of Fla. for the year 1931, page 126, wherein the Commission had under consideration the establishment of a classification and tariff for pulp wood moving intrastate. In that matter the Commission said:

"And now on this date the above matters coming on for formal and final consideration, and the Commissioners being fully advised in the premises do *find* and *order* as follows:

"*Finding* 1. It is found that the issue in this case, and the sole issue, is a proper rating covering Pulpwood, C. L., being between points in Florida.

"*Finding* 2. It is further found that Florida Classification No. 7, at the time of said hearing, and for a long period of time prior thereto, provided a rating on Wood, for fuel C. L. at one-tenth of Class 'P' per cord, with the following Note:

"'*Note:* When shipped in cars less than 36 feet in length, not less than 10 cords will be charged for, excess in proportion. When shipped in cars 36 feet or over in length, not less than 12 cords will be charged for, excess in proportion. Rates to be quoted per cord.'

*"Finding* 3. It is found from the evidence that Fuel Wood may be used as Pulp Wood, and Pulp Wood may be used as Fuel Wood; they are interchangeable. The commodity is the same, whether used as pulpwood or fuel wood.

*"Finding* 4. It is found from the evidence that a higher rating on Pulpwood than on Fuel Wood has not been justified.

"It is therefore *Ordered* and *Adjudged* that on and after the effective date of this Order, the rating on Pulpwood, in carloads between points in the State of Florida, shall be the same as the rating on 'Wood, for fuel, C. L.,' as carried at Index No. 2245, page 16 of Supplement 19 to Florida Classification No. 7 and shall be governed by the 'Note' carried at Index No. 2250, page 16, of Supplement 19 to Florida Classification No. 7, and subject to Rule 19 of the Freight Rules of the Florida Railroad Commission in the construction of combination rates."

Now, there appears to be no material difference between "pulpwood" and "stave bolts and heading" and, if things equal to the same thing are equal to each other, then it follows that there is no difference between "stave bolts and heading" and "wood for fuel."

The record shows that stave bolts and heading consist of round pieces of short lengths or blocks of wood 23 inches to 38 inches in length and from 6 inches to 24 inches in diameter, all being round except oak which is split. As a matter of common knowledge, pulpwood consists of short pieces of wood about 4½ feet long, some round and some split. So if there is any difference in the analogy to be found between "pulpwood" and "wood for fuel" on the one hand and "stave bolts and heading" and "wood and fuel" on the other hand, the analogy is more complete between the latter.

In L. & N. R. R. Co. v. Speed-Parker, Inc., 103 Fla. 439, 137 Sou. 724, we said:

The matter of construing a printed railroad tariff does not differ in character from the construction of any other document which is in dispute. It presents a question of law. Where there is no ambiguity in the language used, a rate may be unjust and yet be enforced as the established one, but in doubtful cases, in the construction of a tariff, as of a law, in order to arrive at the intent of its framers, a court is warranted in considering how the rates claimed would operate as a matter of justice."

And again it is said:

"In this State the power of the carriers to initiate rates on intrastate traiffic is not recognized. The *lawful rates* and the rules and regulations governing the same, are the rates and rules of the Florida Railroad Commission, and not of the carriers. So the case we have before us does not involve the construction by the carrier of its own tariffs and regulations but it involved the construction by the court of the tariffs, rules and regulations made and promulgated by or under the authority of the Railroad Commissioners of this State. In considering any Florida intrastate rate no announcement or construction by the carrier can be considered otherwise than as simply informative, and has no force or effect when departing from the rates, rules or regulations of the State regulatory body. Therefore, some of the rules applied by the Interstate Commerce Commission in construing interstate railroad tariffs are neither appropriate to nor controlling in such a case as we now have before us."

There being no specific classification and tariff fixed for the transportation of "stave bolts and heading," I think that this commodity should take that classification and tariff which is applied to that commodity nearest analogous

thereto for which a definite classification and tariff has been fixed by the Railroad Commission and I think that as a matter of law, the commodity for which classification and tariff was at the time of the shipments here involved fixed by the Railroad Commission nearest analogous to the commodity here involved was "wood for fuel" and that, therefore, the classification and tariff originally applied by the Railroad Company and upon the basis of which the defendant paid the freight was the correct tariff and classification to be applied.