J. L. REINSCHMIDT, *et al.,* individually and as former co-partners doing business under the firm name of Pensacola Cooperage Co., v. LOUISVILLE & NASHVILLE RAILROAD CO.

160 So. 69.
Opinion Filed January 23, 1935.
Rehearing Denied February 9, 1935.

*Coe & McLane,* for Plaintiff in Error;
*Carter & Yonge,* for Defendant in Error.

DAVIS, J.—This was a railroad carrier's action to recover from a shipper the amount of an alleged undercharge of freight on certain shipments of pieces of wood from 23 to 38 inches in length, and from 6 to 24 inches in diameter, designed and cut for stave bolts and headings. A previous judgment in the cause was reversed. See Reinschmidt v.

Louisville & Nashville R. R. Co., 112 Fla. 267, 150 Sou. Rep. 266. This is therefore the second appearance of this case in this Court.

The present writ of error now before this Court was sued out to an order granting the plaintiff railroad company a new trial after the defendant shipper had obtained a favorable verdict from the jury. The only proposition of law involved is whether or not a new trial should have been ordered as a matter of law.

It is plaintiff in error's contention that as a matter of law there was no ground for granting the railroad company a new trial, whereas the railroad company contends that the fact being established to the effect that the shipments in controversy were not fuel wood, it follows that the lower fuel wood freight rates, which was the rate actually collected, was an undercharge for which no other verdict could be legally rendered than for the plaintiff railroad company, on the evidence adduced.

Assuming that a debatable question is involved in this case to the effect that stave bolts and headings (a material used in making barrels) are in all essential respects analogous to fuel wood which is of the same general size and type of cut, and that on principle both commodities should take the same freight rate, the fact remains that the Florida Railroad Commission, which is the only authority possessing the rate making power, has made a classification which prescribes a different and lower freight rate on fuel wood than is applicable on stave bolts and headings. Hence in this case the rail carrier had no choice in the matter other than to insist on collection of the applicable and prescribed higher freight rate for the haulage of stave bolts and headings, when it was shown or admitted that such was the character of the shipment when made, and, since the courts have no

supervisory rate making power which they can exercise in derogation of what the Railroad Commission has prescribed as the lawful freight rate for haulage of stave bolts and headings, it follows that no question can be involved in the trial of this law suit other than to ascertain the nature and character of the shipment.

Where on the trial of a controversy over freight charges the nature and character of a particular shipment by rail is established by the evidence or has been admitted, and it appears that the Florida Railroad Commission has, after due notice and lawful hearing, prescribed and put into force a particular freight tariff and classification governing the freight charges to be imposed by the carrier for the haulage of a freight shipment of the particular nature and character shown or admitted by the evidence in the case, the Railroad Commission tariff, *as a matter of law,* the only applicable and controlling tariff and the court is without the right to enter upon any inquiry whether or not the prescribed Railroad Commission rate is just or reasonable or is otherwise proper as a proposition of administrative scientific rate making. Under the present law of Florida a rate cannot be collaterally attacked for unreasonableness after it is prescribed in due form of procedure by the Railroad Commission, nor attacked as a matter law on grounds not going to the legality of the procedure by which the prescribed rate or classification was arrived at by the Railroad Commission in promulgating it. Such a situation as was presented at the trial of this case calls for a construction of the prescribed tariff and classification only, when the facts of the case are admitted or established. Such construction is a matter of law for the court and should not be submitted to a jury. Hohenberg v. Louisville & N. R.

Co., 46 Fed. (2nd) 952; Louisville & N. R. Co. v. Speed-Parker, Inc., 103 Fla. 439, 137 Sou. Rep. 724.*

Section 6703 C. G. L., 4618 R. G. S., paragraph 13, unlike the Railroad Commission Act of 1899, provides that every rule, regulation, schedule or order of the Commissioners shall be deemed and held to be within their jurisdiction and their powers, to be reasonable and just and such as ought to have been made in the premises, and to have been properly made and arrived at in due form of procedure and such as can and ought to be executed, unless the contrary plainly appear on the face thereof or be made to appear by clear and satisfactory evidence on an appropriate proceeding seeking to have same set aside.

The effect of this change in the statutory law is to make the tariffs and classifications of the Railroad Commission the only lawful rates that can be charged by a rail carrier, where no dominant Federal authority operates to prevent the enforcement of the rates prescribed, adopted or promulgated by the Railroad Commission in the exercise of its rate making powers under which it is authorized to make reasonable and just rates of freight and passenger tariffs

*The holding in Cullen v. Seaboard Air Line Ry. Co., 63 Fla. 122, 58 Sou. Rep. 182, which may appear to be *contra* was predicated upon the Railroad Commission Act of 1899, Chapter 4700, Section 6. The 1899 Railroad Commission Act was much less comprehensive in legal scope and effect than the present Railroad Commission law which is to be found in Chapter 6527, Acts of 1913, and Acts amendatory of, and supplementary thereto. Under the present law a Commission prescribed rate is the only lawful rate where it has been prescribed by the Commission as the result of a full investigation and hearing on the subject. See Par. 13 of Section 6703 C. G. L., 4618 R. G. S. The 1913 Act was intended to fortify Commission made rates so as to make them the lawful rates when arrived at by the Commission by proper procedure.

to be observed by all railroads, railroad companies and common carriers doing business subject to Florida law.

Neither the reasonableness nor the measure of a commission prescribed rate can be *collaterally* assailed in a judicial proceeding. This is so because the courts have no administrative jurisdiction to determine and fix rates *per se,* but jurisdiction only to determine whether the Railroad Commission proceeded within its powers and according to law, and acted reasonably in fixing a rate, and that only in a proceeding to which the Railroad Commission is made a party.

A majority of the Court think that the Court properly granted the railroad company a new trial and that the order appealed from should be affirmed.

Affirmed and remanded for further appropriate proceedings.

WHITFIELD, C. J., and TERRELL and BROWN, J. J., concur.
ELLIS and BUFORD, J. J., dissent.

BUFORD, J. (dissenting).—This case was heretofore before us. See Reinschmidt, *et al.,* v. L. & N. R. R. Co., filed October 7th, 1933, reported 150 Sou. 266. On the mandate going down jury trial was had. Verdict was in favor of defendant. On motion, verdict was set aside and new trial granted.

Motion for new trial contained nine grounds, as follows:

"1. The verdict is contrary to evidence.

"2. The verdict is contrary to the law.

"3. The verdict is contrary to the charge of the court.

"4. The verdict is not supported by the evidence.

"5. The verdict is against the weight of the evidence.

"6. The verdict is without evidence to support it.

"7. The preponderance of the evidence was with the plaintiff.

"8. The court erred in refusing to grant the plaintiff's motion to instruct the jury as follows, to-wit: 'You will find for the plaintiff, the Louisville & Nashville Railroad Company, and assess its damages at $311.85 with interest thereon at 8% from July 20, 1932, the date of the institution of this suit.'

"9. The court erred in refusing to instruct the jury to find for the plaintiff."

Under the law of the case as enunciated by this Court in its former opinion, *supra,* and the evidence as disclosed by the record, it appears to me that neither ground of the motion for new trial was well founded. Under the law and evidence submitted, the trial court could not assume as against the preponderance of the evidence adduced that as a matter of law the commodity transported should have applied thereto the rate applicable to logs and not the rate applicable to fuel wood under which latter rate the carrier had classified and transported the commodity. The carrier failed to establish by a preponderance of the evidence that the commodity on which no special rate or classification had been fixed was nearer analogous to logs than to fuel wood.

The argument and authorities presented and cited in the dissenting opinion in this case on its former hearing here by the present writer and concurred in by Mr. Justice ELLIS are applicable to the case as presented now and sustain the contentions of plaintiff in error.

Therefore, on authority of the opinion and judgment heretofore rendered, *supra,* as well as on the authorities cited and quoted in the dissenting opinion above referred to, I think the order setting aside the verdict and granting a new trial should be reversed.

ELLIS, J., concurs.

ON PETITION FOR REHEARING.

PER CURIAM.—It was shown at the trial that the Railroad Commission had promulgated and put in force a general class rate known as "Class P" rate which was applicable to all shipments of short pieces of wood or logs, including those described as "stave bolts and headings." It was also shown that the Railroad Commission had promulgated and put in force a special or exceptional commodity rate known as a "wood for fuel" rate which latter rate was allowed as an exception to the general Class P rate that otherwise would have been applicable to "wood for fuel" in the absence of such commodity rate because of the general applicability of the "Class P" rate to all kinds of shipments of short pieces of wood not otherwise covered by special commodity tariff.

So the only issue of fact that there was to be determined in this case was the issue whether or not the *particular* shipments sued for were shipments of "wood for fuel" or were shipments of short pieces of wood not designed for fuel and therefore required to come under the general class rate (Class P) which is intended to embrace all shipments of short pieces of wood, or logs, except cedar logs and except "wood for fuel."

The case of Southern R. Co. v. Lowe, 170 Ala. 598, 54 Sou. Rep. 51, to which our attention has been called in the petition for rehearing, is not in point here. This is so because that case turned upon an agreed classification of the particular shipment which the carrier subsequently attempted to repudiate by reclassification for the purpose of claiming a higher charge.

In this case it is not even claimed that these particular shipments here in controversy were shipments of actual "wood for fuel," but simply that they are in all respects

analogous to shipments of "wood for fuel" and should therefore take the lower "wood for fuel" special commodity rate instead of the general Class P rate which is sued for. But that question, as we pointed out in the original opinion, is not a question to be decided by the courts, but is a question to be decided in the first instance by the Railroad Commission which has ample authority to prescribe a special commodity rate on stave bolts and headings equivalent to or no greater than the special commodity "wood for fuel" rate.

Rehearing denied.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and DAVIS, J. J., concur.

BUFORD, J., concurs in the conclusion.